**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA**

SHERRI L. RALPH,                )
                                    )
           Plaintiff,       )
                                    )
v.                              )    Case No. CIV-19-214-BMJ
                                    )
ANDREW SAUL,              )
Commissioner of Social Security    )
Administration,               )
                                    )
           Defendant.     )

## MEMORANDUM OPINION AND ORDER

Plaintiff, Sherri L. Ralph, seeks judicial review of the Social Security Administration's (SSA) denial of her application for disability insurance benefits (DIB). The parties have consented to the exercise of jurisdiction over this matter by a United States Magistrate Judge. *See* 28 U.S.C. § 636(c). The Commissioner has filed the Administrative Record (AR) [Doc. No. 10], and both parties have briefed their positions.[1] For the reasons set forth below, the Court affirms the Commissioner's decision.

## I.    Procedural Background

On December 6, 2017, an Administrative Law Judge (ALJ) issued an unfavorable decision finding Plaintiff not disabled and, therefore, not entitled to DIB. AR 36-48. The Appeals Council denied Plaintiff's request for review. *Id.* at 1-6. Accordingly, the ALJ's decision constitutes the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011). Plaintiff timely commenced this action for judicial review.

---

[1] Citations to the parties' briefs reference the Court's ECF pagination.

## II.     The ALJ's Decision

The ALJ followed the five-step sequential evaluation process required by agency regulations.  *See Wall v. Astrue*, 561 F.3d 1048, 1051 (10th Cir. 2009) (explaining process); *see also* 20 C.F.R. § 404.1520.  Following this process, the ALJ first determined that Plaintiff had not engaged in substantial gainful activity since October 13, 2014, her alleged onset date.  AR 38.

At step two, the ALJ determined Plaintiff suffers from the severe impairment of fibromyalgia and several non-severe medically determinable impairments.  *Id. at* 39-41.  At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1.  *Id. at* 41-42.

The ALJ next determined Plaintiff's residual functional capacity (RFC), concluding that she could perform the full range of sedentary work as defined in 20 C.F.R. § 404.1567(a).  *Id. at* 42-46.

At step four, relying on a vocational expert's (VE) testimony, the ALJ determined Plaintiff is unable to perform any of her past relevant work but had acquired the skills of marketing and communication, and knowledge of the real estate industry from her past relevant work as a real estate broker.  *Id. at* 46-47.  Proceeding to the fifth step, the VE testified that Plaintiff's acquired work skills were transferable to other occupations and that Plaintiff can perform other work existing in significant numbers in the national economy.  *Id. at* 47-48.  The ALJ then relied upon the Medical-Vocational Rules (Grids) to find that Plaintiff was "not disabled" under Rules 201.15 and 201.07.  *Id.*  Therefore, the ALJ concluded that Plaintiff is not disabled for purposes of the Social Security Act.  *Id.* at 48.

## III.     Claims Presented for Judicial Review

Plaintiff alleges the ALJ erred in: (1) adequately accounting for all of her medically determinable impairments in the RFC and (2) sustaining his burden of proof at step five of the

sequential evaluation process.  Pl.'s Br. [Doc. No. 17] at 2-10, 10-13.  Plaintiff also alleges that the SSA Appeals Council erred in declining to consider certain medical records submitted post-hearing.  *Id.* at 13-14.  As explained below, the Court finds no grounds for reversal.

## IV.    Standard of Review

Judicial review of the Commissioner's final decision is limited to determining whether the factual findings are supported by substantial evidence in the record as a whole and whether the correct legal standards were applied.  *See Poppa v. Astrue*, 569 F.3d 1167, 1169 (10th Cir. 2009); *see also Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (holding that the court only reviews an ALJ's decision "to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied" and in that review, "we neither reweigh the evidence nor substitute our judgment for that of the agency" (citations and internal quotation marks omitted)).  Under such review, "common sense, not technical perfection, is [the Court's] guide."  *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1167 (10th Cir. 2012).

## V.     Analysis

### A.     RFC determination

#### 1.  Obesity

In alleging that the ALJ failed to adequately account for all of her medically determinable impairments (MDI) in formulating her RFC, Plaintiff first argues that the ALJ failed to evaluate the effect her obesity had on her other impairments.  Pl.'s Br. at 4-5.[2]  But Plaintiff has provided

---

[2] Plaintiff relies on Social Security Ruling 19-2p, which provides assistance in evaluating cases involving obesity.  Pl.'s Br. at 4-5; SSR 19-2p, 2019 WL 2374244 (May 20, 2019).  SSR 19-2p did not go into effect until May 20, 2019, and thus was not in effect at the time of the ALJ's decision on December 6, 2017.  The Court will rely on SSR 02-1p, a prior Ruling that was effective on the date of the ALJ's decision, for review of Plaintiff's claims.  *See* SSR 19-2p, 2019 WL 2374244 at *5 n.14 ("We expect that Federal courts will review our final decisions using the rules that were in effect at the time we issued the decision.").

no citation to record evidence of any such effects. *See id.* And, as Plaintiff notes, an ALJ "will not make assumptions about the severity or functional effects of obesity combined with other impairments." SSR 02-1p, 2002 WL 34686281, at *6 (Sept. 12, 2002); *Rose v. Colvin*, 634 F. App'x 632, 637 (10th Cir. 2015); *see also* Pl.'s Br. at 4.

Instead, the ALJ must "evaluate each case based on the information in the case record." SSR 02-1p, 2002 WL 34686281, at *6; *Rose*, 634 F. App'x at 637. The ALJ did so here, providing the following discussion with respect to Plaintiff's RFC:

> Overall, the evidence is consistent with the ability to perform sedentary work. It is noted that [Plaintiff] is obese at approximately 4'11" and 165 pounds, and this was considered in accordance with Social Security Ruling 02-1p. However, as noted above, [Plaintiff] maintained full strength with no neurological deficits. Imaging showed only mild changes of the neck, back, and hips and [Plaintiff] remained neurologically intact. The sedentary level reduces back and hip pain by reducing the standing and walking required in an 8-hour day and [Plaintiff's] obesity does not support a further reduction. Additionally, reducing [Plaintiff] to lifting and carrying at the sedentary levels limits aggravation of [Plaintiff's] back, neck, and upper extremity pain.

AR 44. Plaintiff points to no omitted functional limitation that was necessary in light of her obesity, cites no evidence of her obesity's impact, and "has not shown that her obesity alone, or in combination with other impairments, resulted in any further limitations" or precluded her from performing sedentary work, or otherwise presented evidence that the ALJ's evaluation of her obesity was lacking. *See Smith v. Colvin*, 625 F. App'x 896, 899 (10th Cir. 2015) (citing SSR 02-1p, 2002 WL 34686281); *see* Pl.'s Br. at 4-5. Plaintiff has shown no reversible error in the ALJ's evaluation of Plaintiff's obesity and this argument does not warrant remand.

### 2. Fibromyalgia, right wrist fracture, and restless leg syndrome

Plaintiff presents cursory arguments regarding her fibromyalgia, right wrist fracture, and restless leg syndrome. Pl.'s Br. at 5-7. It is well-settled that the claimant "bears the burden of establishing a prima facie case of disability at steps one through four." *Hackett v. Barnhart*, 395

F.3d 1168, 1171 (10th Cir. 2004). As part of her burden, then, Plaintiff "must provide evidence of [her] functional limitations" and "furnish medical and other evidence of the existence of the disability." *Maestas v. Colvin*, 618 F. App'x 358, 361 (10th Cir. 2015); *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004). Here Plaintiff simply asserts that the ALJ failed to include limitations caused by the impairments, but presents no evidence of what those functional limitations are or that any presumed limitations actually exist.[3] Pl.'s Br. at 5-7. Plaintiff has shown no reversible error in the ALJ's evaluation of Plaintiff's fibromyalgia, wrist fracture, or restless leg syndrome, and these arguments do not warrant remand.

### 3. Migraines

Plaintiff asserts that the VE's testimony, together with Plaintiff's statements regarding the limiting effects of her migraines, "is evidence that she cannot perform any substantial gainful employment." *Id.* at 6-7. Plaintiff relies on VE testimony regarding absences and inability to concentrate. *Id.* (citing AR 83-84). The ALJ, however, found that Plaintiff's testimony that her migraines caused excessive absences and inability to concentrate was "not entirely consistent with the medical evidence and other evidence in the record." AR 43; *see also id.* at 42-46 (discussing the inconsistencies between Plaintiff's testimony and the evidence of record). Plaintiff does not challenge this finding.[4] Accordingly, Plaintiff has shown no reversible error in the ALJ's evaluation of Plaintiff's migraines and this argument does not warrant remand.

---

[3] In discussing her right-wrist fracture, Plaintiff lists tasks a real estate clerk might be expected to perform. Pl.'s Br. at 5-6. Plaintiff, however, does not actually argue that she cannot perform those tasks or, to the extent she intends to make such argument, provide pertinent evidence. *See id.* Additionally, as explained *infra*, the ALJ did not rely on the occupation of real estate clerk and, thus, the specific list of tasks for that occupation does not provide relevant information for Plaintiff's argument.

[4] In her Reply Brief [Doc. No. 24], Plaintiff relies on allegations of her subjective symptoms. Reply at 2-5. Such reliance, however, does not create a judiciable challenge to the ALJ's finding. *See Wheeler v. Comm'r*, 521 F.3d 1289, 1291 (10th Cir. 2008) ("In addition, issues raised by an

### 4. Depression

Pointing to the non-severe impairment of depression, Plaintiff argues that the ALJ erred in failing to include any mental limitations in the RFC. Pl.'s Br. at 7-8. Plaintiff is correct that an ALJ must consider the combined effect of both severe and non-severe impairments. *See Wells v. Colvin*, 727 F.3d 1061, 1065 (10th Cir. 2013); 20 C.F.R. § 404.1545(a)(2). But, again, it is Plaintiff's burden to present evidence of any limiting effect caused by her depression.

At step two, the ALJ considered whether Plaintiff's MDI of depression caused more than minimal limitation in her ability to perform basic mental work activities; i.e., the ALJ considered whether Plaintiff's depression was severe or non-severe. AR 40. The ALJ determined that Plaintiff's depression was non-severe and, in making this determination, considered disability regulations for evaluating mental disorders, including what are known as "paragraph B" criteria for the four broad areas of mental functioning: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. *Id.*; *see also* 20 C.F.R. § 404.1520a. In doing so, the ALJ found that Plaintiff had mild limitations in three areas: understanding, remembering, or applying information; concentrating, persisting, or maintaining pace; and adapting or managing oneself. AR 40.

Plaintiff argues that, because the ALJ made these step-two findings, corresponding restrictions for each of the areas should have been included in the RFC. Pl.'s Br. at 7-8. As explained by the ALJ, however, the limitations found at step two of the sequential evaluation do not necessarily translate into functional limitations and restrictions in an RFC assessment:

> The limitations identified in the "paragraph B" criteria are not [an RFC] assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental [RFC] assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by

appellant for the first time on appeal in a reply brief are generally deemed waived, and we will not consider the arguments [the plaintiff] raised for the first time in his reply brief.").

itemizing various functions contained in the broad categories found in paragraph B of the adult mental disorders listing in 12.00 of the Listing of Impairments (SSR 96-8p). Therefore, the following [RFC] assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

AR 40-41; *see* SSR 96-8p, 1996 WL 374184, at \*4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). The Tenth Circuit has rejected the argument that an ALJ must necessarily incorporate "paragraph B" criteria findings of limitations into the RFC finding. *See Vigil v. Colvin*, 805 F.3d 1199, 1203 (10th Cir. 2015) ("The ALJ's finding of a moderate limitation in concentration, persistence, or pace at step three does not necessarily translate to a work-related functional limitation for the purposes of the RFC assessment."). Rather, the ALJ must review the record evidence and conduct a "more detailed" assessment of any mental limitations at the step four RFC assessment. *Id.*

Here, Plaintiff does not argue that record evidence, rather than the ALJ's step-two findings of non-severity, requires RFC limitations for Plaintiff's depression. *See* Pl.'s Br. at 7-8. And record evidence supports the ALJ's RFC determination that no mental limitations were necessary in the RFC.[5] Contrary to Plaintiff's arguments, the ALJ did not "simply disregard" Plaintiff's non-severe mental impairment when assessing her RFC. *See id.* at 8. Rather, the ALJ considered and discussed Plaintiff's depression. *See* AR 42-46. Specifically, the ALJ gave significant weight to

---

[5] With respect to Plaintiff's reference to hypotheticals, *see* Pl.'s Br. at 8, to the extent that Plaintiff intends to argue that the ALJ erred by relying on the VE's response to a hypothetical that did not include paragraph B limitations, it is well-settled that a hypothetical posed to the VE is sufficient if it "included all the limitations the ALJ ultimately included in his RFC assessment." *Qualls v. Apfel*, 206 F.3d 1368, 1373 (10th Cir. 2000). Plaintiff does not present an argument that a hypothetical to the VE did not include all the mental limitations that the ALJ found to exist when determining the RFC.

the psychological consultant who examined Plaintiff and found that she "appeared fully capable of working for a full 40 hour workweek from a psychological point of view; appeared able to understand simple, intermediate, and complex instructions and unskilled, semi-skilled, and skilled work; and appeared able to relate well to co-workers, supervisors, and the public." AR 46 (citing AR 596). The ALJ found that the psychologist's opinion was "generally consistent with findings of a depressed mood but also intact memory, attention, and concentration" as well as "consistent with the claimant's report that she did not stop working because of mental health reasons." *Id.* (citing AR 594-95). The ALJ also gave significant weight to the determinations of the State agency psychological consultants who found Plaintiff "had no more than mild limitations and her mental health impairment was nonsevere." *Id.* (citing AR 87-100, 102-17). The ALJ further observed that medical evidence showed that Plaintiff "typically maintained an appropriate mood and affect," had "normal thought content," and that her "mood was doing well with treatment." *Id.* (citing AR 377, 448, 628, 632, 699, 724). Plaintiff has shown no reversible error in the ALJ's evaluation of Plaintiff's depression and this argument does not warrant remand.[6]

### 5. Finding medically determinable impairments at step two

Plaintiff alleges that the ALJ erred at step two by failing to find that Plaintiff's migraines and obesity were medically determinable impairments. Pl.'s Br. at 8-10. Though the ALJ did not, in fact, specify at step two whether he found migraines and obesity to be medically determinable impairments, *see* AR 39-41, Plaintiff has shown no reversible error. The ALJ did not ignore Plaintiff's migraines and obesity, but considered them throughout the remainder of the evaluation

---

[6] In her Reply, Plaintiff's counsel relies upon a "Tenth Circuit case." Reply at 5-6. Plaintiff's counsel does not provide full citation to the case including the court or date of decision, but the Court has determined that it is not, in fact, a Tenth Circuit case, but rather a decision of the District Court of Utah, which has no precedential value in the Western District of Oklahoma. *See Simmons v. Colvin*, 2:15-CV-00242-EJF, 2016 WL 4435208 (D. Utah Aug. 19, 2016).

process. *See* AR 41-46 (discussing migraines and obesity at steps three and four). As such, any step-two error by the ALJ "became harmless when the ALJ reached the proper conclusion that [Plaintiff] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence." *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008).

### B. ALJ's burden at step five

Plaintiff contends that the "ALJ failed to sustain his burden at step five of the sequential evaluation in finding that there are jobs in sufficient numbers within the national economy that [Plaintiff] is able to perform." Pl.'s Br. at 10. Plaintiff premises her argument on the VE's testimony that Plaintiff could perform the job of real estate clerk, which has 127,000 jobs in the national economy. *Id.* at 10-13 (citing AR 71-72). The ALJ cited the VE's testimony regarding the occupation of real estate clerk, which the VE testified used Plaintiff's transferable skills of knowledge of the real estate industry, marketing and communication. AR 47-48. The ALJ's decision, however, was "reached by direct application of Medical-Vocational Rule 201.15 and 201.07." *Id.* at 47-48.

The Grids are used to direct a finding of disability or non-disability when a claimant's vocational profile (age, education, and work experience) and RFC correspond to every requirement of a particular rule. 20 C.F.R. Part 404, Subpt P, App. 2, § 200.00(d). Here, Plaintiff's age (closely approaching advanced age on the alleged disability onset date then subsequently changing to advanced age), education (high school or more), work experience (skilled with transferrable skills), and RFC (for the full-range of sedentary work) corresponded with the requirements of Grid Rules 201.15 and 201.07, which direct a finding of not disabled. 20 C.F.R. Pt. 404, Subpt. P, App. 2, §§ 201.15 (closely approaching advance age), 201.07 (advanced age); *see* AR 47.

As explained in the SSA's regulations, a finding of not disabled under the Grids includes a finding that there are jobs in sufficient numbers in the national economy that a claimant is able to perform:

> The existence of jobs in the national economy is reflected in the "Decisions" shown in the rules; i.e., in promulgating the rules, administrative notice has been taken of the numbers of unskilled jobs that exist throughout the national economy at the various functional levels (sedentary, light, medium, heavy, and very heavy) as supported by the "Dictionary of Occupational Titles" and the "Occupational Outlook Handbook," published by the Department of Labor; the "County Business Patterns" and "Census Surveys" published by the Bureau of the Census; and occupational surveys of light and sedentary jobs prepared for the Social Security Administration by various State employment agencies. Thus, when all factors coincide with the criteria of a rule, the existence of such jobs is established.

20 C.F.R. § Pt. 404, Subpt. P, App. 2, § 200.00(b). As such, there is substantial evidence supporting the ALJ's decision and Plaintiff's argument that the ALJ did not sustain his burden with respect to the number of jobs available is without merit.

## C. Appeals Council

Plaintiff's final argument is that the Appeals Council erred in failing to consider certain medical records that were submitted after Plaintiff's hearing. Pl.'s Br. at 13-14. Per SSA regulations, under certain circumstances, the Appeals Council will review a case if it receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision. 20 C.F.R. § 404.970(a).[7] Here, the Appeals Council declined

---

[7] Plaintiff references 20 C.F.R. § 404.970(b) and language therein. *See* Pl.'s Br. at 13-14. Effective January 17, 2017, the SSA revised the regulations concerning Appeal Council review and 20 C.F.R. § 404.970(a)(5) is now the pertinent subsection. 20 C.F.R. § 404.970(a)(5) ("Subject to paragraph (b) of this section [providing that the claimant must show good cause for submitting additional evidence], the Appeals Council [will review a case if it] receives additional evidence that is new, material, and relates to the period on or before the date of the hearing decision, and there is a reasonable probability that the additional evidence would change the outcome of the decision.").

Plaintiff's request to review the ALJ decision and did not accept the additional evidence because it "does not show a reasonable probability that it would change the outcome of the decision." AR 1-2.

Plaintiff asserts that the additional evidence should have been considered because it was within the relevant time period and not duplicative. Pl.'s Br. at 13. Plaintiff also cites *Threet v. Barnhart*, 353 F.3d 1185, 1191 (10th Cir. 2003), for the standard that evidence "is material to the determination if there is a reasonable possibility that it would change the outcome." *Id.* But, unlike in *Threet*, Plaintiff does not explain how the new evidence meets that standard; in fact, Plaintiff does not present any argument or explanation whatever as to how the additional evidence is either material or has a reasonable probability that it would change the outcome of the decision. *See* Pl.'s Br. at 13-14; Reply at 6. Simply stating the standard without providing explanation as to how the standard is met does not demonstrate that the Appeals Council erred. This argument does not warrant remand.

## VI.    Conclusion

For the reasons set forth, the Commissioner's decision is AFFIRMED.

ENTERED this 4th day of November, 2019.

_____
BERNARD M. JONES
UNITED STATES MAGISTRATE JUDGE